UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
:
LUIS ACOSTA,                                    :        07-CV-1530 (ARR)
:
                        Plaintiff,              :        NOT FOR ELECTRONIC
:        PRINT OR
-against-                                       :        PUBLICATION
:
:        AMENDED OPINION
:        AND ORDER
N.Y.S. EXECUTIVE DEPARTMENT, DIVISION :
OF PAROLE, COMMISSIONER WILLIAM        :
SMITH, JR., COMMISSIONER JAMES          :
FERGUSON, and COMMISSIONER CHRIS       :
ORTLOFF                                         :
                        Defendants.             :
:
-------------------------------------------------------------- x

ROSS, United States District Judge:

Plaintiff Luis Acosta, *pro-se*, brought this action pursuant to 42 U.S.C. § 1983, alleging

that defendants adopted a policy to deny parole to offenders without balancing the statutory

factors set forth in New York law.  Following discovery, defendants filed a motion for summary

judgment that plaintiff opposed.  For the following reasons, the court grants defendants'

summary judgment motion and dismisses the complaint.

## BACKGROUND

Plaintiff Acosta is a New York State prisoner serving a sentence of ten years to life in

prison pursuant to a 1995 plea of guilty to one count of robbery in the first degree and one count

of robbery in the second degree.  On March 5, 2007, he appeared before the Parole Board,

presided over by defendants William Smith, James Ferguson, and Chris Ortloff, and was denied

1

parole for the second time. Plaintiff alleges that the New York State Executive Department, Division of Parole, has violated his constitutional rights by adopting a policy that ignores the statutory factors set forth in N.Y. Exec. Law § 259-i(2)(c)(A) and by denying him parole solely "based upon the nature and severity of the underlying crime [he committed] and the statement [that] 'there is a reasonable probability that [if plaintiff were released] he would not live and remain at liberty without violating the law.'" Compl. at 4. Plaintiff contends that the Parole Board refuses "to exercise any discretion at all and automatically denie[]s release." Compl. at 4. Plaintiff seeks $350 million in damages for pain and suffering. Compl. at 4. Plaintiff also seeks an injunction ordering an immediate rehearing of his parole application, wherein different commissioners shall preside and properly consider the statutory factors. See Compl. at 4, 5.

## STANDARD OF REVIEW

A moving party deserves summary judgment if, "upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993); see Fed. R. Civ. P. 56(c). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty, 477 U.S. 242, 249 (1986). In addressing a motion for summary judgment, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). Summary judgment should be granted "[o]nly when no reasonable trier of fact could find in favor of the non-moving party . . . ." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). The

2

moving party bears the initial burden of demonstrating that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). If the movant successfully shoulders its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## DISCUSSION

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. Viewing the complaint as raising the strongest arguments that it suggests, see generally McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004), the court construes plaintiff's allegations as stating civil rights claims under 42 U.S.C. § 1983 for a due process violation, an equal protection violation, a violation of the *Ex-Post Facto* Clause of the U.S. Constitution, and a violation of the Double Jeopardy clause of the Fifth Amendment.

### A. Plaintiff's Procedural Due Process Claim Fails

Plaintiff alleges that there is a Constitutional right to have parole decisions made in accordance with New York law and that the Parole Board adopted a policy discounting and ignoring the factors governing discretionary parole set forth in N.Y. Exec. Law § 259-i. See Compl. at 4A. In addition to challenging this alleged policy, plaintiff also argues that defendants failed to consider the statutory guidelines in his individual parole determination. Compl. at 5.

New York law provides that "discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined." N.Y. Exec. Law § 259-i(2)(c)(A). Rather, the Board may grant parole after "considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Id. To guide the Board in its decision, the statute outlines five factors that must be considered:

1. The institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;
2. Performance, if any, as a participant in a temporary release program;
3. Release plans including community resources, employment, education and training and support services available to the inmate;
4. Any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of corrections services . . . and
5. Any statement made by the crime victim.

N.Y. Exec. Law. § 259-i(2)(c)(A). The statute does not, however, guide the Board regarding how much weight it should assign to each factor. See Farid v. Bouey, 554 F.Supp.2d 301, 321 (N.D.N.Y. 2008).

### i. Plaintiff has Failed to Show that the Parole Board Adopted a Policy to Deny Parole to Offenders

Plaintiff alleges that an inmate has a "constitutional right to have a parole determination made in accordance with the proper statutes and laws" and that the Board adopted a "policy to generally deny parole without using section 259-i." Compl. at 4A. Defendants deny that any such policy existed. See Defs' Mem. Of Law in Support of Mot. For Summary Judgment at 8

4

(hereinafter "Defs' Mem."). Plaintiff relies heavily on a case in the Southern District of New York, in which Judge Brieant held that "there exists a Constitutional right to have a parole decision made in accordance with the statute." Graziano v. Pataki, 2006 WL 2023082, at *8 (July 17, 2006 S.D.N.Y.). Facing a similar allegation, Judge Brieant concluded that a policy by which the Board refuses to exercise its discretion delineated in N.Y. Exec. Law § 259-i, and instead systematically denies parole, constitutes a due process violation. Id. at 7. Therefore, Judge Brieant denied the defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss and permitted the case to proceed to discovery so that the plaintiff could have an opportunity to establish whether such an unpublished policy existed. Id. at *8. Other courts in this circuit, facing the same allegation, have declined to adopt Graziano's reasoning, holding that there is no constitutional entitlement to have a process of decision making that comports with New York law. See e.g., Schwartz v. Dennison, 518 F.Supp.2d 560, 574 (S.D.N.Y.) (concluding that a policy denying parole to sex offenders would not violate due process); Mathie v. Dennison, 2006 WL 2351072, at *7 n.4 (Aug. 16, 2007 S.D.N.Y.) (noting that Graziano's reasoning was "unpersuasive").[1]

Assuming, for the purpose of this summary judgment motion only, that a constitutional right to have a parole determination made in accordance with New York law exists, defendants' summary judgment motion is granted because plaintiff has failed to adduce any credible evidence to support the inference that such a policy exists. Instead, plaintiff offers bald conclusory and self-serving allegations, and cites his own parole denial, extrapolating it into a general policy

---

1 The court is persuaded by Judge Lynch's reasoning in Mathie, in which the court concluded that a general policy to deny parole to violent offenders would not violate due process. Because discovery was conducted in this case, however, the court will review the record and address the pending summary judgment motion.

without foundation or evidence. See Pl's Mem. Of Law in Support of Motion in Objection to Dismiss the Compl. at 2, 8 (hereinafter "Pl's Mem.") ("This type of decision constitute [sic] a prohibited policy to generally deny parole release without using the section 259-i(c)(A).") ("Plaintiff allege that the parole board illegal denials is part of their political and monetary gains for usurp and job security [sic]."); Ex. C., Dep. of Luis Acosta, Tr. at 31, 47 (Feb. 19, 2008) (The Parole Board goes in there, you sit before one guy. Your record is not even reviewed."). Such conclusory statements, without more, cannot survive summary judgment on plaintiff's due process claim.

Plaintiff also offers "statistics" to support his contention that an unconstitutional policy exists. For example, in his deposition, he asserted that he learned about the policy through "trial and error" and by looking at statistics he gleaned from postings on the bulletin board that summarized the panel's decisions. See Ex. C., Dep. of Luis Acosta, Tr. at 47. Yet, plaintiff never cites these statistics in his briefs; he merely states that they exist. Rather, plaintiff attached to his Rule 56.1 Statement of Fact three exhibits, each of which is a decision by the Board to deny parole to an inmate. These exhibits, however, do not support plaintiff's argument that an unconstitutional policy exists. First, three separate decisions in which the Panel denies parole is not evidence of a wide-spread, general policy to deny parole. They are anecdotal at best. Second, each decision demonstrates that the panel's determination was made after considering each inmates' individual circumstances, belying plaintiff's assertion that the Panel ignores New York law and perfunctorily denies parole. See Ex. A (The instant offense . . . is the culmination of a criminal history that dates back to 1985. . . Your repeated failures at probation, parole,

recidivism, make you a poor candidate for early discretionary parole."); Ex. B ("This decision is based on the following factors: The seriousness nature of the instant offense of murder 2. . . . This is clearly an escalation of your criminal history."); Ex. C ("You have not been deterred by court intervention or correctional influences in the past.").

Furthermore, plaintiff admits that no one informed him of the policy, he never heard defendants speak about the alleged policy, and he inferred the existence of such a policy "based on personal experience." See Ex. C., Dep. of Luis Acosta, Tr. at 47- 48, 51, 68. Illogically, plaintiff contends that the policy was in existence on the two separate occasions on which he was granted parole. See Ex. C., Dep. of Luis Acosta, Tr. at 50-51. Plaintiff thus undermines his own argument. On the other hand, all three defendant commissioners executed sworn affidavits in which each maintains that no general policy to deny parole based on the nature and severity of the underlying crime exists. See Decl. of Chris Ortloff, at 2; Decl. of James Ferguson at 2; Decl. of W. William Smith, at 2. Thus, plaintiff has not adduced evidence sufficient to sustain his burden of demonstrating that defendants created a policy under which unconstitutional practices occurred.

For these reasons, the court holds that plaintiff failed to adduce evidence from which a reasonable juror could conclude that the Parole Board adopted a blanket policy to deny parole to offenders in violation of the Due Process clause. Therefore, defendants' motion for summary judgment is granted.

### ii. The Parole Board Did Not Act Arbitrarily or Capriciously When it Denied Plaintiff's Parole Application

In addition to alleging an unconstitutional policy to denial parole to B-1 offenders, plaintiff contends that in his individual case, the Parole Board did not balance the statutory factors

that are supposed to guide the Board's decision. See Pl's Mem. at 2. New York's discretionary

parole system does not create a legitimate expectancy of release that gives rise to a due process

right. See generally Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001); Standley v. Dennison,

2007 WL 2406909, at *9 (Aug. 21, 2007 N.D.N.Y.). Even though plaintiff has no liberty interest

in parole, however, the Parole Board may not deny plaintiff's application for parole for arbitrary

or impermissible reasons. See Farid v. Bouey, 554 F.Supp.2d 301, 321 (N.D.N.Y. 2008);

Standley, 2007 WL 2406909, at *9; Mathie v. Dennison, 2007 WL 2351072, at *6 (Aug. 16,

2007 S.D.N.Y.). Plaintiff argues that pursuant to N.Y. Exec. Law § 259-i(5), "a person who

commits a crime – even a crime as serious as murder – is capable of rehabilitation and thus the

inherent seriousness of the crime is not a sufficient basis, by itself, for denying parole." Pl's

Mem. at 3A. Thus, plaintiff claims that the Parole Board unconstitutionally denied his parole

because it did not apply the factors enumerated in N.Y. Exec. Law § 259-i(5) to his case. See Ex.

C., Dep. of Luis Acosta, at 18-19 (Feb. 19, 2008) ("All I am asking [is] that [the Board] apply the

rules to 259-i to me. I am not asking for anything else.").

The transcript of the parole hearing reveals that the Board did consider the statutory factors

when it decided to deny plaintiff's parole for the second time. First, the Board acknowledged as

good accomplishments his educational and behavioral achievements. See Compl. Appendix. A,

Tr. 2-3 (noting plaintiff's completion of his GED, participation in a college course, and a "pretty

good disciplinary record."). And, plaintiff informed the Board of his intention to give up any

future illegal action and live a law abiding life. Id. at 6. At the same time, however, the Board

also noted that plaintiff had a prior criminal history, including two prior convictions for robbery.

See Compl. Appendix. A, Tr. 5. Indeed, plaintiff was on supervised release at the time he committed the robbery for which he is currently incarcerated. Id. In turn, the Board noted that plaintiff has been incarcerated or in supervisory release since 1986. Id. Thus, the Board denied parole, concluding that plaintiff's

> release to supervision at this time would deprecate the serious nature of [plaintiff's] instant offense and undermine respect for the law. . . . Of significant concern is [plaintiff's] demonstrated pattern of robbery-related crime that has now led you to a third New York sentence. . . . Positive factors considered include good behavior and program accomplishments. However, this panel concludes . . . release would represent a serious risk to the public safety and is therefore inappropriate at this time.

Id. at 8.

Despite plaintiff's protestations to the contrary, the record demonstrates that the Parole Board considered the statutory factors and made a reasoned decision when it denied his application for discretionary release. The Board considered his good behavior and educational accomplishments and decided they were outweighed by his repeated illegal conduct, the most recent of which was undertaken while plaintiff was on parole. Indeed, plaintiff has been paroled twice before and violated his parole each time. See Ex. C., Dep. of Luis Acosta, at 18-19 (Feb. 19, 2008). Furthermore, the "Board was entitled to determine that the nature of the crime outweighed the positive aspects of his record." Morel v. Thomas, No. 02 Civ. 9622, 2003 WL 21488017, at *5 (S.D.N.Y. Jun. 26, 2003); see also Graziano, 2007 WL 2023082, at *8 ("where a Board has properly considered statutory guidelines, it may . . . deny parole where it determines upon a fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors."). While the court understands that plaintiff vehemently disagrees with the Board's emphasis on his pattern of prior criminal conduct

9

and willingness to violate supervisory release, the court cannot agree that the Board's decision was either arbitrary or impermissible, or contrary to New York law, which does not specify how to weigh the statutory factors. See Farid, 554 F.Supp.2d at 321. To the contrary, the record demonstrates that the Board took into account the statutory factors and reached a reasoned decision. In turn, because plaintiff has failed to adduce evidence sufficient to give rise to an inference of a due process violation, defendants' motion for summary judgment on this claim is granted.

**B.      Plaintiff's Remaining Claims are Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)**

A court may convert a motion for summary judgment into a Fed. R. Civ. P. 12(b)(6) motion to dismiss a complaint for failure to state a claim without notice to either party. See Katz v. Molic, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989). Conversion is appropriate when the court does not examine extrinsic evidence, but instead bases its decision to dismiss solely on the pleadings. Id. See also Schwartz v. Compaignie General Transatlantique, 405 F.2d 270, 273-74 (2d Cir. 1968). When considering a Rule 12(b)(6) motion, the court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). Furthermore, courts are particularly hesitant to dismiss actions filed by *pro se* litigants, as *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). As a general rule, an action brought *pro se* "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980). Applying these standards, the remainder of plaintiff's claims must be dismissed for failure to state a claim.

### i. Plaintiff's Claims for Monetary Damages are Barred

All of plaintiff's claims for money damages are barred under the rule set forth in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), where the Supreme Court held that a prisoner may not assert a damages claim under § 1983 that "attacks the fact or length of the inmate's confinement without first showing that the conviction or sentence has been reversed or otherwise invalidated." Odom v. Pataki, No. 00-CV-3727 (DC), 2001 WL 262742, at *3 (S.D.N.Y. Mar. 15, 2001) (citing Heck, 512 U.S. at 486-87). Heck prohibits a § 1983 action if "success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). The Heck bar applies to a § 1983 damages action that, like this one, "challenges the fact or duration of parole release [because] the plaintiff is in effect attacking his confinement." Mathie v. Dennison, No. 06-CV-3184 (GEL), 2007 WL 2351072, at *4 (S.D.N.Y. Aug. 16, 2007) (quoting Hill v. Goord, 63 F.Supp.2d 254, 261 (E.D.N.Y. 1999)). Plaintiff's requests for damages are therefore dismissed.[2]

### ii. Plaintiff's Equal Protection Claim is Dismissed

Plaintiff has failed to assert a viable claim under the equal protection clause. If, as defendants point out, plaintiff's claim is that the parole board has a policy of refusing to consider the statutory factors at all parole hearings, regardless of the crime for which the parole-eligible prisoner has been convicted, his equal protection rights have not been violated because all inmates

---

2 In light of the court's dismissal under Heck of all damages claims, there is no need to address the individual commissioner defendants' arguments that the 11th Amendment protects them from damages arising out of claims brought against them in their official capacity.

have been treated equally.  See Defs' Reply Mem. at 4.  On the other hand, if plaintiff's claim is

that the alleged policy applies only to B-1 felony offenders, not other classes of prisoners, it fails

as a matter of law.  It is axiomatic that neither prisoners generally nor violent felony prisoners in

particular, are a suspect class for purposes of the equal protection clause.  See Lee v. Governor of

State of N.Y., 87 F.3d 55, 60 (2d Cir. 1996) (prisoners not a suspect class); Mathie, 2007 WL

2351072, at *8 (violent prisoners are not a suspect class).  Thus, the state's purported blanket

policy to deny parole to violent felony offenders need only be rationally related to a legitimate

government interest, see Salahuddin v. Unger, No. 04-CV-2180, 2005 WL 2122594, at *7,

(E.D.N.Y. Sept. 2, 2005).  In this case, "the state's rational basis for a distinction in parole

determinations between violent and nonviolent offenders is . . . preventing the early release of

potentially violent inmates." Id. See also Morel v. Thomas, No. 02 Civ. 9622, 2003 WL

21488017, at *5 (S.D.N.Y. Jun. 26, 2003) ("the Board's decision to get tough on violent offenders

. . . seems entirely permissible [because it] closely relates to the statutory factor of whether release

is not incompatible with the welfare of society.") (citation omitted).  Thus, plaintiff's claim under

the equal protection clause is dismissed.

### iii. Plaintiff's Ex Post Facto Claim is Dismissed

Similarly, plaintiff has not, and cannot, assert a viable claim under the *ex-post facto* clause.

As the Second Circuit has noted, "[t]he focus of the *ex post facto* inquiry is not on whether a

legislative change produces some ambiguous sort of disadvantage . . . but on whether any such

change . . . increases the penalty by which a crime is punishable." Doe v. Pataki, 120 F.3d 1263,

1272 (2d Cir. 1997) (quoting California Department of Corrections v. Morales, 514 U.S. 499, 506

n. 3 (1995)). In this case, it is undisputed that plaintiff was sentenced to a term of ten years to life in prison, and that plaintiff has served approximately eleven and one half years of that sentence. See Defs' Reply Mem. at 6. Thus, contrary to plaintiff's contention, it cannot be said that the board's denial of parole in any way increased the penalty to which plaintiff was originally sentenced. Therefore, his claim under the *ex-post facto* clause is therefore also dismissed.

### iv. Plaintiff's Double Jeopardy Claim is Dismissed

Finally, plaintiff's Fifth Amendment Double Jeopardy claim must be dismissed. It is well settled within this circuit that the "Double Jeopardy Clause applies to judicial proceedings, not parole." See e.g., Alessi v. Quinlan, 711 F.2d 497, 500-01 (2d Cir. 1983) (citation omitted); Farid v. Bouey, 554 F.Supp.2d 301, 307 (N.D.N.Y. 2008). Thus, including prior criminal history in the decision making process is not constrained by the Fifth Amendment. Therefore, plaintiff's Double Jeopardy claim is dismissed.

## CONCLUSION

For the reasons explained above, defendants' motion for summary judgment is granted and the case is dismissed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated: December 31, 2008
       Brooklyn, New York

13

SERVICE LIST:

<u>Pro Se Plaintiff</u>
Luis Acosta
97A2206
Arthur Kill Corr. Facility
2911 Arthur Kill Road
Staten Island, NY 10309

<u>Attorney for Defendants</u>
Neil Shevlin
Assistant Attorneys General
120 Broadway
New York, NY 10270


cc:     Magistrate Judge Lois Bloom